IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**GARRETT W. HANSON, II,**

      **Petitioner,**

      v.                              CASE NO.  21-3014-JWL

**R. BAKER, Warden,**
**Leavenworth Detention Center,**[1]

      **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a prisoner in federal custody at FCI-El Reno, proceeds *pro se*. Petitioner challenges his prison disciplinary proceedings which resulted in the loss of good conduct time ("GCT"). The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

**I. Background**

Petitioner is currently incarcerated with the Federal Bureau of Prisons ("BOP") at FCI-El Reno. At the time of filing, Petitioner was in custody at the Leavenworth Detention Center in Leavenworth, Kansas.

Petitioner is currently serving a sentence of ten (10) years for Conspiracy to Distribute 500 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A). *See* Doc. 9–1, Declaration of J. George ("George decl."), at ¶ 9 and Exhibit D.  Petitioner's sentence was imposed in the Southern District of Iowa,

---

[1] Petitioner is currently housed at the Federal Correctional Institution in El Reno, Oklahoma ("FCI-El Reno").  S.R. Grant, the Warden at FCI-El Reno, is substituted as the proper respondent in this case.

1

on May 23, 2012.  *Id*.  Petitioner has a projected release date of February 6, 2021, via good conduct time release.  *Id.*

Petitioner alleges due process violations in connection with his disciplinary proceedings and seeks the expungement of the disciplinary action, return of all GCT, as well as immediate release from prison.  (Doc. 1, at 2.)

## II.  Facts

Petitioner's disciplinary charges arose while he was serving his sentence at a Residential Reentry Center ("RRC"), in Fort Des Moines, Iowa.  *See* George decl., at ¶ 3.  On February 14, 2020, at 5:56 a.m., Petitioner signed himself out of the RRC for work, with a scheduled return of 6:15 p.m. that same date.  *Id*. at ¶ 10, Exhibit E.  Because Petitioner had not arrived back at the facility, he was placed on Escape status at approximately 6:50 p.m. on the same date.  *Id.*  On February 14, 2020, the facility wrote a Center Discipline Committee Report, Incident Report No. 3405920 (02-14-2020), noting his whereabouts were unknown.  *Id.*

Petitioner's incident report was investigated on February 15, 2020, at 9:00 a.m., which noted Petitioner was not present and his whereabouts were unknown.  *See* George decl., ¶ 11, Exhibit F.   Additional forms were completed by contract staff, noting Petitioner would not be in person and the hearing would be *in absentia*, including: the Notice of Center Discipline Committee Hearing (Exhibit G); Inmate Rights at Center Discipline Committee Hearing (RRC's) (Exhibit H); and Waiver of 24 Hour Notice (Exhibit I).

On February 21, 2020, Petitioner's Center Discipline Committee Hearing was held *in absentia*, as Petitioner was not located at that facility.  Petitioner was found to have committed the Prohibited Act of Escape, as he did not return at the designated time from his purported trip for work on February 14, 2020.  *See* George decl., ¶ 12, Exhibit J.

Based on the incident report and the investigation, the Center Discipline Committee ("CDC") found that Petitioner committed the prohibited act of Code 102, Escape From a Non-Secure Institution Including Community Confinement (RRC), and referred the incident report to J. George, BOP certified Discipline Hearing Officer ("DHO"), for appropriate sanctions. *See* George decl., ¶ 13, Exhibit J. The CDC documented its decision in a document entitled the Center Discipline Committee Report. *Id.*

On June 9, 2020, DHO J. George reviewed the CDC hearing on Incident Report No. 3405920, for compliance with the CDC discipline policy specified in the Community Corrections Manual and *Wolff v. McDonnell*. George decl., ¶¶ 14–15, Exhibits J, F. DHO George found the due process afforded to be appropriate for an *in absentia* hearing. *Id.*

Petitioner did not arrive back at a BOP institution until January 21, 2021, when he arrived at FCI-El Reno. *See* George decl., ¶¶ 8, 16, Exhibits D, K. On that same date, Incident Report No. 3405920 was delivered to Petitioner. *See* George decl., ¶ 16, Exhibit K. Petitioner was provided with the previous incident report as well as an additional cover incident report indicating the prior report was served *in absentia*. *Id.* The incident reports were delivered on January 21, 2021, at 10:15 a.m. *Id.*

The incident report was investigated by a lieutenant on January 21, 2021, immediately after he was provided with a copy of the Incident Report. *See* George decl., ¶ 17, Exhibit L. Petitioner was advised of his various rights, was read the incident report, and given a copy. *Id.* Petitioner made the following statement to the investigating lieutenant "you violated my due process." *Id.* The investigative lieutenant indicated Petitioner did not request any witnesses and indicated he understood his rights. *Id.* At 12:50 p.m., the investigative lieutenant referred the matter to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

Petitioner was able to appear before the UDC later that same date, at 1:40 p.m. *See* George decl., ¶ 18, Exhibit K. Petitioner indicated he did not receive a copy of the report previously, that he had returned to a form of custody on 02-16-2020, and that the Residential Reentry Staff were aware of where he was during that period of time described in the Incident Report. *Id.* The UDC found Petitioner's charges should be referred to the DHO for further disposition. *Id.*

Petitioner was given a Notice of Discipline Hearing before the DHO on January 21, 2021. *See* George decl., ¶ 19, Exhibit M. Petitioner was given a copy of the Inmate Rights at Discipline Hearing on the same date. *See* George decl., ¶ 19, Exhibit N. Included among these rights was the opportunity to have a staff representative assist with the Discipline Hearing, the right to present documentary evidence on Petitioner's behalf, and the right to present a statement to the DHO or remain silent. *See* Exhibits M, N. Petitioner signed both documents indicating he received them. *Id.* Petitioner indicated he did not wish to call any witnesses and indicated he did not wish to have a staff representative appointed to assist him during the disciplinary process. *Id.*

A hearing was held before DHO J. George concerning Incident Report No. 3405920 (02-15-2020) and its cover Incident Report No. 3405920 (01-21-2021) on January 22, 2021, at 10:55 a.m., more than twenty-four (24) hours after Petitioner was provided with notice of the incident report. *See* George decl., ¶ 20, Exhibit O.

At the hearing, the DHO reviewed Petitioner's due process rights with him. *See* George decl., ¶ 21, Exhibit O. The DHO noted Petitioner did not request or have a staff representative appointed, did not request any witnesses, and did not seek to present any documentary evidence. *Id.* The DHO ensured Petitioner understood his due process rights and was prepared to proceed with his disciplinary hearing. *Id.*

4

Petitioner appeared before the DHO and presented a verbal statement regarding his charge for violating Code 102, Escape. *See* George decl., ¶ 22, Exhibit O. Petitioner stated that he went to work that day, was done with work and left early but did not return to the RRC. *Id.* Petitioner indicated that since it had been several months, he did not recall where he went for those days. *Id.* He indicated he called the RRC to ask about turning himself in and was told to go to the Polk County Jail, which he did. *Id.* Petitioner then discussed how he had not known about the *in absentia* hearing and discovered the loss of his forty (40) GCT days when his family found out about his changed release date. *Id.* Petitioner indicated that he attempted to file an administrative remedy in December related to the incident report. *Id.* He indicated the RRC Staff would have known at the time of the *in absentia* hearing that he was actually at the Polk County Jail. *Id.*

After reviewing the evidence, the DHO found that the greater weight of the evidence established Petitioner committed the prohibited act of Escape in violation of Code 102. *See* George decl., ¶ 25, Exhibit O. In making his determination, the DHO considered the incident report from the Des Moines Residential Reentry Center in which the reporting officer indicated Petitioner signed out of the RRC at 5:56 a.m. for employment but did not return at the expected 6:15 p.m. time, that Petitioner was placed on Escape Status at 6:50 p.m., and that the incident report was written indicating Petitioner still had not returned to the facility after nearly four (4) hours. *See* George decl., ¶ 26, Exhibits O, E, and K. In making his determination, the DHO considered the BOP's SENTRY computer database printout showing Petitioner's escape status during the time frame of the incident. *See* George decl., ¶ 27, Exhibit P. In making his determination, the DHO considered Petitioner's verbal statement before him and the UDC, as

well as his election to not provide a statement during the investigation besides the alleged due process violations.  *See* George decl., ¶ 28, Exhibit O.

Program Statement 5270.09, *Inmate Discipline Program,* distinguishes between escapes in which the inmate voluntarily returns to BOP custody within four (4) hours, which is a Level 200 Prohibited Act (High Severity Level) and any other escape, which is a Level 100 (Greatest Severity Level) Prohibited Act.  Inmates who commit Level 100 Prohibited Acts face the highest level of disciplinary sanctions.  *See* George decl., ¶ 29; Exhibit A.  Petitioner admitted he had not returned to the Fort Des Moines facility at the designated time.  *See* George decl., ¶ 30; Exhibit O.  He admitted he had been gone for at least two (2) days.  *Id.*  The DHO considered Petitioner's concerns about the fact he was in a form of custody and the delay before he had an in-person hearing.  *Id.*  However, the DHO noted the delay did not hinder his ability to make a defense to the charges.  *Id.*  As Petitioner had been away from the RRC facility and unaccounted for a period of time greater than four (4) hours, the 100-level charge of escape was deemed appropriate by the DHO.  *Id.*  The DHO found that based on the incident report, Petitioner's statements acknowledging his return to custody, and the SENTRY transactions showing he was on escape status, the greater weight of the evidence supported that Petitioner committed the prohibited act of Escape, Code 102.  *Id.*

The DHO sanctioned Petitioner with the disallowance of forty (40) days of GCT.  *See* George decl., ¶ 31, Exhibit O.  The disciplinary sanctions imposed were consistent with those allowed by policy and were imposed in an effort to deter this type of misconduct in his short time remaining on his sentence.  *Id.*  The DHO noted unaccountability issues cannot be tolerated in a correctional environment and that BOP and residential reentry staff need to be able to account for Petitioner at all times.  *Id.*  Petitioner was advised of the DHO's findings and his ability to

appeal through the administrative remedy process within twenty (20) days of the receipt of the report. *See* George decl., ¶ 32, Exhibit O. The DHO subsequently generated a written report, signed on January 22, 2021. *Id.* A copy of the report was delivered to Petitioner on the same date at 12:00 p.m. *Id.*

## III. Discussion

### 1. Exhaustion

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. Petitioner alleges that although he filed a grievance, the DHO claimed at the January 2021 hearing that it was lost. (Doc. 10, at 3.) Petitioner provided his certified mail receipt showing that his grievance was received at the North Central Regional Office. (Doc. 1–1.) Respondent claims that Petitioner has not exhausted his administrative remedies through the Central Office level. (Doc. 9, at 11 n.3.) Even if the Court assumes exhaustion of administrative remedies, Petitioner's claim still fails on the merits.

### 2. Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). A federal prisoner has a constitutionally protected liberty interest in his earned GCT. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, Petitioner was entitled to due process at his disciplinary hearing that resulted in the loss of GCT. *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal

law and who have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in [criminal] proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 561 (1974); *see also Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006).

In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 563–66 (citations omitted); *see also Abdulhaseeb*, 173 F. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). Additionally, there must be some evidence to support the decision and the decisionmaker must be impartial. *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592) (Marshall, J., concurring)).

### 3. Procedures

Petitioner's escape charge occurred while he was serving his sentence at the RRC. Staff responsible for discipline at an RRC contract facility are trained to participate in the Center Discipline Committee ("CDC"). *Residential Reentry Center Statement of Work Inmate Discipline* (Chapter 13), Exhibit C; (Doc. 9–1, at 74). CDC is synonymous with the term Unit Discipline Team ("UDC") used in BOP policies. *Id*.

The BOP's disciplinary process at a contract facility is as follows: A staff member will prepare an incident report explaining the factual support for the alleged violation of the disciplinary codes and forward the incident report for investigation. *See* George decl., ¶ 4,

Exhibit C, at pp. 81–82.  Staff will provide the inmate with a copy of the incident report, ordinarily within twenty-four (24) hours of the time staff became aware of the resident's involvement in the incident.  *Id*.  Upon completion of the investigation, the investigating officer will refer the incident report to the CDC for an initial hearing.  *See* George decl., ¶ 4.  The initial CDC hearing will ordinarily occur within five (5) working days after the incident report was issued, excluding the time an incident report was referred for possible criminal prosecution.  *Id*.; Exhibit A, at p. 25; (Doc. 9–1, at 35–36).  The CDC can (1) find the inmate committed the prohibited act, and for certain disciplinary violations, sanction him; (2) find the inmate did not commit the prohibited act; or (3) find the inmate committed the prohibited act and refer relevant documents to the DHO for final sanctions.  *Id*. at 24; (Doc. 9–1, at 35).

Ordinarily the DHO shall review the CDC packet for compliance with the CDC discipline policy specified in the Community Corrections Manual and *Wolff v. McDonnell*.  *See* George decl., ¶ 5, Exhibit B, Program Statement ("P.S.") 7300.09, *Community Corrections Manual*, at Ch. 5, pp. 19–20; (Doc. 9–1, at 69–70).  If there are any discrepancies in the CDC packet, the DHO shall communicate directly with the CDC Chairperson by telephone or written correspondence.  *Id*.  The DHO shall also sign and date the CDC Report on the top right side to certify compliance with disciplinary requirements.  *Id*.  If the DHO is not satisfied that all criteria are met, they will return the packet to the CDC and point out errors and omissions to be corrected.  *Id*.  If the DHO is satisfied that all criteria are met, he or she will certify, impose final action, and sign and date the CDC report.  *Id*.  DHO J. George was responsible for reviewing the CDC packet for Petitioner's discipline for Incident Report No. 3405920 (02-15-2020).  *See* George decl., ¶ 7.

Program Statement 5270.09, *Inmate Discipline Program,* provides that when an inmate escapes, the UDC (or CDC) will conduct the required review/hearing of the incident report in the inmate's absence at the facility where he was last confined.  *See* George decl., ¶ 6, Exhibit C; P.S. 5270.09 at § 541.7(d)(3) (review) and § 541.8(e)(4) (hearing); (Doc. 9–1, at 36, 41); *see also* 28 C.F.R. § 541.8(e)(4).  "When an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than an in-absentia hearing may be held at the DHO's discretion." P.S. 5270.09 at § 541.8(e)(4); (Doc. 9–1, at 41). "When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution." *Id.*; P.S. 5270.09 at § 541.8(e)(4); (Doc. 9–1, at 41); *see also Residential Reentry Center Statement of Work Inmate Discipline* (Chapter 13), Exhibit C; (Doc. 9–1, at 77) ("If circumstances do not allow for the in-person hearing (e.g., permission cannot be obtained by the holding official or the resident is on escape status), the CDC will conduct the hearing in absentia and notify the RRM.").

Petitioner does not dispute that he committed the escape that forms the basis for his disciplinary proceedings, or that he eventually received due process at his disciplinary proceedings in January 2021.  *See* (Doc. 1, at 1) ("On Feb. 14, 2020 I was schedule[d] to return to the CCC at 6:15 p.m. I did not return to custody tell [sic] Feb. 16 between 4 and 5 p.m."); (Doc. 10, at 1) (stating "I have never denied my absence from the CCC" and that "yes my rights were afforded to me once I reached this facility"); *see also* George decl., ¶¶ 22, 30, Exhibit O (at his recent in person hearing, Petitioner admitted he had not returned to the RRC at the designated time).  Rather, Petitioner alleges due process violations due to the delay in receiving his in-

10

person hearing.  Prior to the hearing, Petitioner was already serving time past his original release date due to the forfeited GCT.  Petitioner argues that it took eleven months and his filing of this habeas petition for the BOP to provide him with due process.  Petitioner argues that he will not be able to administratively appeal the disciplinary action prior to his release.

Petitioner not only takes issue with the delay in receiving his hearing, but he also alleges that the BOP failed to follow its own policies.  Petitioner claims that the hearing could have been conducted earlier when he was at Polk County or CCA-Leavenworth, both of which he claims were listed as an "assigned facility."  (Doc. 10, at 4.)     Petitioner also argues that although he ultimately received an incident report and a DHO packet, he was not previously provided with a CDC/DHO packet from the RRC.  Petitioner argues that the *in absentia* hearing is dated February 21, 2020, and states that Petitioner's whereabouts are unknown.  Petitioner argues that his whereabouts were known as of February 17, 2020, and the regulations provide that the DHO may do an in person or phone hearing when the escapee is in local custody.

Respondent argues that Petitioner's due process rights were not violated at the *in absentia* CDC hearing, and even if violations occurred, they were corrected with the January 21, 2021 in-person hearing.  Respondent argues that even if due process is not fully complied with, the disciplinary proceedings should be upheld because any error was harmless.  (Doc. 9, at 13) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (concluding that errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review), and *Howard v. U.S. Bureau of Prisons*, 434 F. App'x 731, 733 (10th Cir. 2011) (unpublished) (affirming the use of harmless error analysis to a refusal of the BOP to produce and review a videotape allegedly showing portions of the prisoner altercation that formed the basis of the disciplinary charge)).

The Court finds that Petitioner was afforded all the due process protections mandated by *Wolff v. McDonnell*. Petitioner was afforded all three procedural protections mandated by *Wolff*. He was given advance written notice of the charge by delivery of the IR more than 24 hours prior to the DHO hearing. Petitioner was advised of his procedural rights before the DHO hearing and given the opportunity to present witnesses and documentary evidence in his defense. Petitioner personally appeared at the hearing and provided a verbal statement. Petitioner was provided a copy of the DHO's written statement, which sets forth the evidence relied upon and the reasons for the disciplinary action and sanctions. The DHO is a certified DHO, an impartial hearing officer that was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process.

Petitioner's claims regarding the BOP's failure to follow policies and procedures fail to state a due process violation. "[P]rison regulations are meant to guide correctional officials, not to confer rights on inmates." *Farrakhan-Muhammad v. Oliver*, 677 F. App'x 478, 2017 WL 460982, at *1 (10th Cir. Feb. 3, 2017) (unpublished) (citing *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995)); *Cooper v. Jones*, 372 F. App'x 870, 872 (10th Cir. 2010) (unpublished) ("The process due here is measured by the Due Process Clause of the United States Constitution, not the internal policies of the prison."). Therefore, a failure to strictly follow administrative regulations "does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer*, 486 U.S. 183, 194 (1984)). Thus, even an admitted failure to strictly follow BOP regulations or internal guidelines would not provide a basis for habeas relief. Furthermore, some of the language Petitioner relies on is permissive, not mandatory. For example, he alleges that his *in absentia* hearing could have been done in person or by a phone hearing when he was in local custody. But the BOP Program Statement provides

that "[w]hen an inmate escapes, and is in local custody where a hearing may be held, an in-person rather than an in-absentia hearing *may* be held *at the DHO's discretion*." P.S. 5270.09 at § 541.8(e)(4) (emphasis added); (Doc. 9–1, at 41).

The Court is certainly sympathetic to Petitioner's frustration with the delay in receiving his in-person hearing. However, prisoners have raised similar concerns and courts have found that they do not rise to the level of a due process violation if the hearing complies with the due process requirements outlined in *Wolff*.

In *Gates v. J.P. Young*, the petitioner challenged the loss of good time credit during an *in absentia* disciplinary hearing, claiming that upon his return to custody the disciplinary charges were not reheard as required by 28 C.F.R. § 541.17(d) and that he was never provided with notice of the original decision. *Gates v. J.P. Young*, No. 2:06-CV-1850, 2007 WL 2263068, at *1 (W.D. La. June 18, 2007) (Report and Recommendation) (adopted and judgment entered August 6, 2007). Petitioner claimed that the delay—in that case seven years—in providing him with notice of the disciplinary charges and an in-person hearing deprived him of due process. *Id*. The language in § 541.17(d), since repealed, is substantially similar to the language in P.S. 5270.09 at § 541.8(e)(4). The court noted that "due to administrative errors, petitioner's disciplinary proceedings were not reopened within the ordinary time frame upon petitioner's return to custody" and they were, in fact, not reopened until after petitioner filed his habeas petition. *Id*. at *3.

The court found that the failure of the BOP to follow its own regulations is not a *per se* violation of due process and found that *Wolff v. McDonnell* governs the review of petitioner's disciplinary proceedings. *Id*. The court noted that petitioner did not dispute the factual basis of his escape charge, and found that "[a]lthough petitioner's in-person disciplinary hearing was held

well beyond the ordinary 60-day window . . . petitioner has failed to demonstrate that he was prejudiced by this delay or that his due process rights were violated." *Id.* at *4.

Likewise, in *Whalen v. Fed. Bureau of Prisons*, petitioner argued that his due process rights were violated because his first hearing was held *in absentia* even though he was allegedly in custody at the time, and because his new hearing was untimely. *Whalen v. Fed. Bureau of Prisons*, No. 09-CV-1572 (ENF), 2011 WL 2669112, at *4 (E.D.N.Y. June 30, 2011). The court noted that procedures are naturally somewhat different in instances of inmate escape. *Id*. The court noted that petitioner was in transit during part of the delay and found that although petitioner did not receive a hearing within 60 days, a new hearing was eventually granted and it complied with the due process requirements outlined in *Wolff*. *Id*. at *5.

### 4. Some Evidence

Although Petitioner does not allege a lack of evidence, the Court finds that there was "some evidence" to support the DHO's decision. Where the due process requirements of *Wolff* are met, as is the case here, the decision of the DHO will be upheld if there is "some evidence" to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (quoting *Hill*, 472 U.S. at 456). A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457.

The Court is bound by the "some evidence" standard and finds that the evidence relied upon by the DHO satisfies that standard. Based upon Petitioner's admission that he did not return to the RRC for a couple of days and the SENTRY printout showing Petitioner's escape status, some evidence supports the decision of the DHO. "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996). "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchel*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

## IV.  Conclusion

Petitioner's allegations fail to raise a due process violation under *Wolff*. The Court finds that Petitioner received adequate due process in his prison disciplinary proceedings, and the decision of the DHO is supported by some evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that the petition for writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.

**Dated February 4, 2021, in Kansas City, Kansas.**

> <u>S/ John W. Lungstrum</u>
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**